1  Brian Kenner, PH: 760 473-4958
   Kathleen Kenner, PH: 760 473-5681

2  17550 Harrison Park Rd.
   P.O. Box 427
3  Julian, CA 92036

4  Pro Se

5

6

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

Brian Kenner, an individual, and Kathleen     )   Case No. **10 CV 2105    BTM WVG**
Kenner, an individual,                         )
                                               )   Date:    October 8, 2010
       Plaintiffs                              )
                                               )
                                               )
       v.                                      )
                                               )
                                               )
                                               )
E. Kelly , an individual, J. Plasky, an        )   **COMPLAINT**
individual, C. Rose, an individual, Pittner, an)
individual, Crawford, an individual, Blizzard, )   **(JURY TRIAL DEMANDED)**
an individual, Becerra, an individual,         )
Shaughnessy, an individual, Alito, an          )
individual, Meigs, an individual, Barbara      )
Dunn, an individual, Lacy Dunn and Do, A       )
Professional Corporation, and Does 1-25        )
                                               )
       Defendants.                             )
_____)

11       1.      COMES NOW, Plaintiffs Brian Kenner, an individual, Kathleen Kenner, an

12  individual (collectively "KENNER"), for causes of action against defendants Revenue Officer

13  E. (Erin) Kelly, Process Examiner J. Plasky, GM Pittner, Dir. Alito, Area Dir. Crawford, OIC

14  Specialist C. Rose, GM Blizzard, AGM Becerra, AC Atty. Shaughnessy, AC Atty. Meigs,

15  collectively "CORRUPT-IRS-COLLEAGUES," as Title 18 §1962 (c) *"persons"* operating or

---

                                    1                    Case No:

Brian Kenner, PH: 760 473-4958
Kathleen Kenner, PH: 760 473-5681

17550 Harrison Park Rd.
P.O. Box 427
Julian, CA 92036

Pro Se

FILED

'10 OCT -8 AM 11: 33

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                    DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Brian Kenner, an individual, and Kathleen
Kenner, an individual,

    Plaintiffs

        v.

E. Kelly , an individual, J. Plasky, an
individual, C. Rose, an individual, Pittner, an
individual, Crawford, an individual, Blizzard,
an individual, Becerra, an individual,
Shaughnessy, an individual, Alito, an
individual, Meigs, an individual, Barbara
Dunn, an individual, Lacy Dunn and Do, A
Professional Corporation, and Does 1-25

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **10 CV 2105**    **BTM WVG**

Date:  October 8, 2010

**COMPLAINT**

**(JURY TRIAL DEMANDED)**

1.    COMES NOW, Plaintiffs Brian Kenner, an individual, Kathleen Kenner, an

individual (collectively "KENNER"), for causes of action against defendants Revenue Officer

E. (Erin) Kelly, Process Examiner J. Plasky, GM Pittner, Dir. Alito, Area Dir. Crawford, OIC

Specialist C. Rose, GM Blizzard, AGM Becerra, AC Atty. Shaughnessy, AC Atty. Meigs,

collectively "CORRUPT-IRS-COLLEAGUES," as Title 18 §1962 (c) *persons* operating or

managing the IRS *"enterprise"* through a *"pattern of racketeering"* as outlined in

COMPLAINT in four separate *Criminal Episodes* containing thirteen loosely independent

dishonest *schemes* encompassing fifty-six separate and diverse 18 U.S.C. §1961 *"predicate*

*acts."* Defendants CORRUPT-IRS-COLLEAGUES, Attorney Barbara Dunn, and Lacy, Dunn

& Do, are liable to Brian & Kathleen Kenner ("KENNER") as 18 U.S.C. §1962 (d) RICO

conspirators <u>by</u> having agreed to the objectives of one or more of the plans to steal from

KENNER and obstruct KENNER rights, <u>and by</u> furthering the efforts of *Criminal Episode 1-4*

with at least one overt act of racketeering against KENNER resulting in proximate harm to

KENNER property and businesses.

## <u>JURISDICTION AND VENUE</u>

2.     Jurisdiction of this court is founded on 28 U.S.C. § 1331 because this complaint

arises from the laws of the United States.

3.     Jurisdiction of this court is further founded on 28 U.S.C. § 1332 because there is

a diversity of citizenship between plaintiff and defendants:

a)  Plaintiffs KENNER are individuals who are residents of Julian, California.

b)  Defendants E. Kelly (an IRS Revenue Officer, Emp. #: 33-05034 ("KELLY")), C.
    Rose (an IRS Offer In Compromise Specialist, Emp.#: 33-08058 ("ROSE")), Pittner
    (IRS General Manager, #: 27082701 ("PITTNER")), Blizzard (IRS General
    Manager, ICS ID: 27071901 ("BLIZZARD")), Alito (IRS Director ("ALITO")),
    Crawford (IRS Area Director ("CRAWFORD")), and Becerra (Assistant General
    Manager ("BECERRA")) are citizens of and reside in the State of California.

c)  Defendant J. Plasky (IRS Process Examiner, Emp. #: 0202115 ("PLASKY")) is a
    citizen of and resides in the State of Tennessee.

d)  Defendant Meigs (IRS Attorney, AC Atty. ("MEIGS")) is a citizen of and resides in
    the United States.

e)  Defendant Shaughnessy (IRS Attorney, AC Atty. ("SHAUGHNESSY")) is a citizen
    of and resides in the United States.

2                    Case No:

f) Defendant Barbara Dunn (Attorney ("DUNN")) is a citizen of and resides in the State of California.

g) Defendant Lacy, Dunn, & Do ("LD&D") is A Professional Corporation with its place of business in La Crescenta, California.

h) Does 1 – 25 are anticipated to reside in various states as this action is against IRS employees (acting in their individual capacity) working and residing in various states across the nation.

i) And the fact that the matter in controversy exceeds the sum of $25,000, exclusive of interests and costs.

4. Venue is proper in this judicial district because:

a) The events or omissions giving rise to the claims asserted in this complaint occurred substantially within this judicial district.

b) Defendants KELLY, ROSE, PITTNER, BLIZZARD, ALITO, CRAWFORD, and BECERRA are understood to be employed at IRS offices within this judicial district.

## STATEMENT OF CLAIM

5. This COMPLAINT is founded on fifty-six criminal RICO predicate acts encompassed within thirteen loosely independent criminal schemes and four separate criminal episodes. Each episode was designed by corrupt IRS staff to obtain money that they were either not lawfully entitled to or to conceal the underlying illegal acts of that theft. Agents used the illegal schemes of *Criminal Episode 1* to defeat the lawful protections afforded to KENNER during an OIC evaluation in order to take KENNER assets. The illegal schemes of *Criminal Episode 2* were used by agents to fabricate a justification to "return" KENNER's OIC to, once again, undermine KENNER's Title 26 rights in order to confiscate their assets. That particular criminal effort failed. The illegal schemes of *Criminal Episode 3* were a second (ultimately successful) attempt at the goals of episode 2. Finally, KENNER has used the freedom of information act ("FOIA") to assemble the facts of their case. Two requests for

1   ICS-HISTORY data were made: one in December 2009 and one in the summer of 2010.  Prior

2   to receiving a response from the second FOIA request for ICS-HISTORY data, KENNER filed

3   an administrative complaint against the IRS to the IRS.  In ***Criminal Episode 4*** the IRS used

4   the content of the administrative complaint and altered the ICS-HISTORY in a misguided

5   attempt to conceal their corrupt activities and defeat the arguments made in the administrative

6   complaint.

7   *Defendants Operating Outside their Authority*

8       6.      CORRUPT-IRS-COLLEAGUES and Does 1-25 have no authority, by any law

9   established within the United States Code or regulations promulgated there under, to engage in

10  any actions set forth is this complaint as outlined by the RICO predicate acts established herein

11  or the RICO statute itself.

12  *An Interstate Wire Communication/Collaboration System ("IRS ICS-HISTORY")*

13      7.      The IRS ICS-HISTORY is a computer system based on a multi-user database.

14  IRS staff make regular entries into this database, documenting the details of their work in tax

15  assessment and collection.  The database has two primary purposes:  IRS agent collaboration

16  ("IRS-COLLABORATION") and generation of the historical record of agent activities and

17  taxpayer contact ("HISTORY").  The database is centralized but shared by IRS agents and

18  other third parties across the country, using interstate networking and communications

19  technology.  Any agent from any state can make entries or read entries from any agent working

20  in any state of the country.  Its entries are therefore *always* interstate.  IRS Agents and third

21  parties rely upon the information recorded in the database, since it is the central repository

22  through which IRS agents communicate and collaborate.  The ICS database is the central tool

23  for this purpose in use by the IRS.  The HISTORY aspect of the ICS-HISTORY database is

24  purposeful as it is recognized as formal documentation for past statements, actions, and

25  outcomes for both the IRS and the taxpayer.  The ICS-HISTORY database is therefore a

26  federal witness to IRS-Taxpayer interactions.  Intentional misrepresentations made to

27  HISTORY are acts of wire fraud and dishonest acts designed to tamper with the testimony of

4                          Case No:

this witness and other consumers of ICS-HISTORY information in an effort to affect the outcome of a future official activity or proceeding.

*Interstate Commerce*

8.      IRS activities are interstate.  IRS tax collection is interstate, involving and impacting the commercial activities of individuals living and working in *all* states.

**_Criminal Episode No. 1_**

9.      KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD, either directly or indirectly, took part in the conduct of the IRS *"enterprise"* to carry out multiple acts of racketeering, fraud, extortion, and witness tampering, in order to unlawfully obtain settlement funds from a KENNER lawsuit against their tax professionals, while a proper KENNER/IRS Offer In Compromise ("OIC") was pending.

10.     KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD (**Criminal Episode 1-Scheme 1, "CE1-1"**) extorted KENNER Attorney Edson to obtain authorization from KENNER for KELLY to contact KENNER lawsuit opposition parties.  Authorizations were necessary, because an OIC was pending and collection efforts against KENNER were unlawful.  KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD then intentionally abused the plain meaning of the KENNER authorization to make opportunity to dishonestly craft multiple and differing intentional material misrepresentations to KENNER and concerned parties, in order to illegally confiscate Michael Shaff ("SHAFF") settlement funds:

a)  KELLY, PITTNER, ALITO, and CRAWFORD (**CE1-2**) intentionally misrepresented to DUNN, SHAFF's attorney, that KENNER had provided written authorization for the IRS to take the money for its own purposes.  DUNN understood that it was KENNER's intention to use the settlement funds for their OIC.  DUNN and LD&D intentionally utilized the KELLY misrepresentation in order to support the corrupt goals of *Criminal Episode 1*.

b)  KELLY, PITTNER, ALITO, and CRAWFORD concealed the dishonest act *(CE1-2)* from Rick Edson by (**CE1-3**) intentionally misrepresenting to Edson that both

1   DUNN and the SHAFF insurance carrier required direct payment to the IRS instead

2   of KENNER.  DUNN & LD&D did however share the same goals as KELLY—that

3   is, that SHAFF settlement funds not be made available to KENNER for use in their

4   OIC.

5   c)   KELLY, PITTNER, ALITO, and CRAWFORD concealed the dishonest acts *(CE1-*

6   *1)* and *(CE1-2)* from KENNER by **(CE1-4)** intentionally misrepresenting to

7   KENNER that the IRS was legally allowed to confiscate the settlement funds

8   because KENNER had failed to properly observe IRS OIC laws and rules.

9   d)   KELLY, PITTNER, ALITO, and CRAWFORD **(CE1-5)** concealed the dishonest

10   acts *(CE1-2), (CE1-3),* and *(CE1-4)* from HISTORY with numerous intentional

11   misrepresentations in the IRS IC-HISTORY database contemporaneous to the

12   events of *(CE1-1), (CE1-2), (CE1-3),* and *(CE1-4).*

13   e)   PLASKY, KELLY, PITTNER, ALITO, and CRAWFORD **(CE1-6)** further acted

14   to conceal the unlawful acts of *(CE1-1), (CE1-2), (CE1-3),* and *(CE1-4)* by

15   intentionally misrepresenting to KENNER and HISTORY that their OIC wasn't

16   received until after the actions of *(CE1-1) and (CE1-2)* or until after KENNER

17   reached settlement with SHAFF.

18   ### First PREDICATE RICO ACT - (CE1-1)

19   *EXTORTION (18 § 1951) against KELLY, PITTNER,*

20   *ALITO, and CRAWFORD*

21   11.   Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated

22   herein.

23   12.   On or about August 5, 2009 KELLY, PITTNER, ALITO, and CRAWFORD

24   either directly or indirectly took part in the conduct of the IRS *"enterprise"* to use fear of

25   economic harm against KENNER attorney/representative Rick Edson in order to coerce him

26   into obtaining permissions from KENNER later dishonestly misused by KELLY, PLASKY,

27   PITTNER, ALITO, and CRAWFORD to confiscate the SHAFF settlement.

KENNER COMPLAINT - FOR DAMAGES

a) KELLY represented in the <u>IRS</u> ICS-HISTORY database that she had all the information needed to pay Attorney Rick Edson for his work on the KENNER lawsuit against SHAFF but intentionally withheld this payment in order to obtain the permissions necessary to access KENNER lawsuit opposition parties.

b) Using the IRS ICS-HISTORY database, KELLY kept CORRUPT-IRS-COLLEAGUES apprised of her actions and progress against KENNER and others.

c) CORRUPT-IRS-COLLEAGUES were made intimately aware of KELLY's illegal and dishonest actions against KENNER through the ICS-DATABASE and other open and concealed communications.

d) Using the ICS-HISTORY database, CORRUPT-IRS-COLLEAGUES reviewed, advised, induced, counseled, directed, and otherwise encouraged her conspicuously dishonest actions against KENNER and others.

13.    KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD's collection activities against KENNER after OIC receipt were wrongful since they had no lawful authority to engage in collection efforts against KENNER after the KENNER OIC was received *and while it was being investigated (reviewed or processed).*

a) KENNER's OIC was formally received by the IRS on July 22 (or 23-two stamped dates), 2009.

b) KELLY and *principals* PLASKY and CORRUPT-IRS-COLLEAGUES understood collection activities against KENNER after OIC receipt were unlawful.

c) KENNER, in their July 23, 2009 OIC application, explicitly and in writing, represented that it was their intention to use a portion of the SHAFF lawsuit settlement proceeds as consideration for their OIC.

d) KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD did wrongfully confiscate KENNER lawsuit proceeds after OIC receipt and before its return, rejection, or acceptance.

**Second THROUGH Seventh PREDICATE RICO ACTS**

7                    Case No:

*MAIL FRAUD (18 § 1341) against KELLY, PLASKY, PITTNER, ALITO,*

*CRAWFORD, DUNN, and LD&D*

14.  Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

15.  Once limited access to lawsuit settlement parties was gained, KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD made numerous intentional misrepresentations to either facilitate the confiscation of settlement funds from its owner or parties responsible for its custody and control or to conceal the illegality of the confiscation from KENNER or concerned parties.

   a) KENNER authorized KELLY to speak to Edson and lawsuit opposition party representative Barbara Dunn for the purpose of making payment to Rick Edson for his legal services in support of the KENNER/SHAFF lawsuit.

   b) KENNER offered no written or oral permission for KELLY to determine how SHAFF settlement funds were to be disbursed outside of those statements made by KENNER in connection with their OIC proposal.

16.  KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD either used and/or caused to be used the mail for the purpose of executing, or attempting to execute, the illegal and fraudulent scheme to confiscate KENNER settlement funds outside of but during the IRS OIC process:

   a) **(CE1-2)** & KELLY ET AL. 1341 ACT 1: On or about 8/28/2009, KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent that KENNER had given KELLY *written permission* authorizing the IRS to collect the SHAFF settlement funds for purposes other than the KENNER-IRS Offer In Compromise ("OIC") in a letter to Barbara Dunn, KENNER lawsuit-defendant attorney for Michael Shaff ("SHAFF").  Using this intentional misrepresentation, KELLY,

1    PITTNER, ALITO, and CRAWFORD obtained access to and illegally confiscated

2    KENNER assets.

3    b)  (CE1-3) & <u>KELLY ET AL. 1341 ACT 2</u>:  Using another intentionally

4       misrepresented justification (to confiscate KENNER assets) in a related but notably

5       dissimilar <u>8/28/2009 letter to Attorney Edson</u>, KELLY, PITTNER, ALITO, and

6       CRAWFORD either directly or indirectly took part in the conduct of the IRS

7       *"enterprise"* to intentionally misrepresent to Rick Edson that Barbara Dunn and the

8       SHAFF insurance carrier *demanded* that the settlement funds be paid directly to the

9       IRS and that they had the authority to make that decision.  In Edson's letter,

10      KELLY purposely omitted the intentional misrepresentation (made in the 8/28/2009

11      Dunn letter) that KENNER had offered their written permission for the IRS to take

12      the settlement funds.  This letter was mailed to Edson on or about 8/28/2009—the

13      same day KELLY mailed the Dunn and KENNER letters (KELLY ET AL. 1341

14      ACTs 1 and 3).  KELLY expected, and it was justifiable for Edson to rely upon, this

15      KELLY intentional misrepresentation, since she cited, in an additional act of

16      intentional misrepresentation, authority for observing Dunn and SHAFF's insurance

17      company's payment arrangement demand.  In Edson's reliance on the KELLY's

18      intentional misrepresentations, KELLY, PITTNER, ALITO, and CRAWFORD

19      furthered the fraud of KELLY ET AL. 1341 ACT 1 by concealing its

20      misrepresentations from Edson.

21   c)  (CE1-4) & <u>KELLY ET AL. 1341 ACT 3</u>:  Using still another intentionally

22      misrepresented justification in a related but notably dissimilar 8/28/2009 letter to

23      KENNER, KELLY, PITTNER, ALITO, and CRAWFORD either directly or

24      indirectly took part in the conduct of the IRS *"enterprise"* to intentionally

25      misrepresent in a letter to KENNER that the IRS had confiscated the SHAFF

26      settlement funds because they were not sent by KENNER to the IRS concurrent

27      with the KENNER OIC submission.  In this letter, KELLY intentionally

9                           Case No:

misrepresented that the IRS was legally authorized to take the settlement funds. KELLY, PITTNER, ALITO, and CRAWFORD expected KENNER to rely upon the misrepresentations in the letter in order to further the fraud of <u>KELLY ET AL. 1341 ACT 1</u> by concealing its intentional misrepresentations.   This dishonest act contributed to the illegal confiscation of KENNER assets.

d) **(CE1-6)** & <u>KELLY ET AL. 1341 ACT 4</u>: On or about 8/8/2009, PLASKY, KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent in a letter to KENNER, through design and by omission, that KENNER's OIC was not received until 8/8/2009.  PLASKY, KELLY, PITTNER, ALITO, and CRAWFORD either wrote or caused this letter to be written.  The PLASKY letter dishonestly lent legitimacy to KELLY's contact with SHAFF attorney Barbara Dunn on dates prior to 8/8/2009.  PLASKY, KELLY, PITTNER, ALITO, and CRAWFORD expected KENNER to rely upon the letter's intentional misrepresentations to further their fraudulent scheme to illegally confiscate KENNER assets.

e) <u>KELLY ET AL. 1341 ACT 5</u>: On or about 9/22/2009, KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS *"enterprise"* to have the check representing SHAFF settlement funds mailed to the IRS.  These funds were obtained through the unlawful acts of *Criminal Episode 1,* and in the furtherance of MAIL FRAUD (<u>KELLY ET AL. 1341 ACT 1</u>) above.

f) <u>KELLY ET AL. 1341 ACT 6</u>: On or about 9/22/2009, DUNN and LD&D mailed the SHAFF settlement check to the IRS for payment outside the KENNER OIC in support of the KELLY, PITTNER, ALITO, and CRAWFORD intentional misrepresentation of "<u>KELLY ET AL. 1341 ACT 1</u>" above and in furtherance of *Criminal Episode 1.*  DUNN and LD&D understood that KENNER intended to apply the SHAFF settlement to their OIC application.  DUNN and LD&D

understood that KELLY, PITTNER, ALITO, and CRAWFORD intended to

confiscate the settlement funds outside the OIC process.

### Eighth THROUGH Twentieth PREDICATE RICO ACTS – (CE1-5)

*WIRE FRAUD (18 § 1343) against KELLY, PLASKY,*

*PITTNER, ALITO, and CRAWFORD*

17.   Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated

herein.

18.   KELLY, PLASKY PITTNER, ALITO, and CRAWFORD used the interstate

IRS ICS-HISTORY database to further the fraudulent scheme to confiscate KENNER lawsuit

settlement funds.  During the period of time encompassing *Criminal Episode 1*, IRS ICS-

HISTORY entries made by KELLY and CORRUPT-IRS-COLLEAGUES were used to

execute, further, council, command, conceal, and/or induce the commission of the dishonest

acts comprising *Criminal Episode 1*.

a) KELLY ET AL. 1343 ACT 1:  On or about 8/18/2009, KELLY, PITTNER,

ALITO, and CRAWFORD either directly or indirectly took part in the conduct of

the IRS *"enterprise"* to intentionally misrepresent to IRS ICS-HISTORY

("HISTORY") through the interstate IRS ICS-HISTORY and agent collaboration

database that KELLY had written permission from KENNER to determine the final

amount of settlement funds available to the IRS outside of, but during the pendency

of the KENNER OIC.

b) KELLY ET AL. 1343 ACT 2:  On or about 8/28/2009, KELLY, PITTNER,

ALITO, and CRAWFORD either directly or indirectly took part in the conduct of

the IRS *"enterprise"* to intentionally misrepresent to HISTORY that the IRS had

the authority to determine the settlement payment arrangement that excluded either

KENNER or payment of funds for the benefit of the KENNER OIC.

c) KELLY ET AL. 1343 ACT 3:  On or about 8/28/2009, KELLY, PITTNER,

ALITO, and CRAWFORD either directly or indirectly took part in the conduct of

the IRS *"enterprise"* to intentionally misrepresent to HISTORY that the IRS had the authority to make the determination that the lawsuit settlement would be paid directly to the IRS.

d) <u>KELLY ET AL. 1343 ACT 4</u>:  On or about 8/28/2009, KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that payment to the IRS was required by DUNN and the SHAFF insurance company.  KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent intentionally misrepresent to HISTORY that DUNN and the SHAFF insurance company had authority to require payment directly to the IRS.

e) <u>KELLY ET AL. 1343 ACT 5</u>:  On or about 8/28/2009, KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent  to HISTORY that the settlement could not be used for the KENNER OIC.

f) <u>KELLY ET AL. 1343 ACT 6</u>:  On or about 8/28/2009, KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KELLY had written permission from KENNER to determine how funds would be disbursed.

g) <u>KELLY ET AL. 1343 ACT 7</u>:  On or about 8/31/2009, KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that her interactions with KENNER attorney Rick Edson were genuine and in good faith.

h) <u>KELLY ET AL. 1343 ACT 8</u>:  On or about 9/24/2009, KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KENNER funds were legitimately the property of the IRS.

i) <u>KELLY ET AL. 1343 ACT 9</u>:  On or about 10/8/2009, KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS "*enterprise*" to intentionally misrepresent to HISTORY that the unlawful acts comprising *Criminal Episode 1* are legal.

j) <u>KELLY ET AL. 1343 ACT 10</u>:  On or about 8/18/2009, KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS "*enterprise*" to intentionally misrepresent to HISTORY that the KENNER OIC was received on 8/8/2009.

k) <u>KELLY ET AL. 1343 ACT 11</u>:  On or about 8/31/2009, KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS "*enterprise*" to intentionally misrepresent to HISTORY that the KENNER OIC was received on 8/8/2009.

l) <u>KELLY ET AL. 1343 ACT 12</u>:  On or about 8/31/2009, KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS "*enterprise*" to intentionally misrepresent to HISTORY that SHAFF settlement funds were secured lawfully outside the OIC process.

m) <u>KELLY ET AL. 1343 ACT 13</u>:  On or about 9/24/2009, KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS "*enterprise*" to intentionally misrepresent to HISTORY and IRS Revenue Officer N. Ayrapetwan (RO # 27081340) that SHAFF settlement funds were secured lawfully outside the OIC process and could be applied directly to the KENNER tax liability.

n) In addition to acts of wire fraud <u>KELLY ET AL. 1343 ACTs 1-13</u>, KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS "*enterprise*" to make 20 additional entries into the IRS ICS-DATABASE incident to and in support of their fraudulent scheme to confiscate KENNER funds (*Criminal Episode 1*).

o)   Ongoing access to the ICS-HISTORY by other agents working in other states has created continuing acts of wire fraud by KELLY, PLASKY, PITTNER, ALITO, and CRAWFORD through its memorialized intentional misrepresentations.

### Twenty-First PREDICATE RICO ACT

*BANK FRAUD (18 § 1344) against KELLY, PITTNER, ALITO, CRAWFORD, DUNN and LD&D*

19.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

20.     On or about 9/22/2009, KELLY, PITTNER, ALITO, CRAWFORD, DUNN, and LD&D either directly or indirectly took part in the conduct of the IRS *"enterprise"* to knowingly execute the fraudulent scheme of *Criminal Episode 1* in order to obtain the SHAFF settlement which was under the custody and control of a financial institution insured by the federal government.

### Twenty-Second PREDICATE RICO ACT

*RACKETEERING (18 § 1952) against KELLY, PITTNER, ALITO, and CRAWFORD*

21.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

22.     On or about 9/24/2009, KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS *"enterprise"* to use, with intent, the mails and the interstate IRS ICS-HISTORY database to obtain and distribute the SHAFF settlement funds obtained through the fraudulent scheme and acts of *Criminal Episode 1.*

### Twenty-Third PREDICATE RICO ACT

*WITNESS TAMPERING (18 § 1512) against KELLY, PITTNER, ALITO, and CRAWFORD*

23.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

14                    Case No:

24.     KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS "*enterprise*" to knowingly use acts <u>KELLY ET AL. 1343 ACTs 1-13 and others</u>, and related misleading conduct, with the intent to corruptly influence the testimony of other IRS staff and third parties in future official proceedings. KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS "*enterprise*" to also knowingly use acts <u>KELLY ET AL. 1343 ACTs 1-13 and others</u> to, or in an effort to, alter, destroy, and conceal information collected and stored by the ICS-HISTORY database with the intent to impair the ICS-HISTORY's integrity for use in an official proceeding.

### Twenty-Fourth PREDICATE RICO ACT

*WITNESS TAMPERING (<u>18 § 1512</u>) against KELLY, PITTNER,*

*ALITO, and CRAWFORD*

25.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

26.     On or about 8/28/2009, KELLY, PITTNER, ALITO, and CRAWFORD either directly or indirectly took part in the conduct of the IRS "*enterprise*" to destroy or conceal the KELLY letter to KENNER of KELLY ET AL. 1341 ACT 3. The KELLY, PITTNER, ALITO, and CRAWFORD representation that the letter does not exist is done with the intent to impair the object's integrity or availability for use in an administrative or legal action.

+++++++++++++++++++++++++++

*Criminal Episode No. 2*

27.     *Criminal Episode No. 2* is ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS first attempt to fraudulently <u>return</u> KENNER's OIC and thus gain access to other KENNER lawsuit settlement funds. It failed. In an OIC "return," as opposed to OIC <u>acceptance</u> or <u>rejection</u>, the OIC applicant loses rights, making it all but impossible for the applicant to use the rule of law to protect their property. CORRUPT-IRS-COLLEAGUES understood this. Their plan was to

find justification to *return* the KENNER OIC.  Then, by carefully timing the notice of OIC

return to KENNER, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD,

BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS could confiscate other KENNER

assets without KENNER presenting any lawful objection.

28.    KENNER justifiably filed their OIC as a low income taxpayer.  Having no other

legal theory to return the *proper* KENNER OIC, ROSE, KELLY, PLASKY, PITTNER,

ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS decided to

fabricate a scenario wherein KENNER did not meet the low income taxpayer requirement.

They would later dishonestly attempt to manipulate KENNER into agreeing with their

assertion in order to "legitimize" their fraud and then use HISTORY to formalize the

agreement.

29.    Thus, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD,

BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS first **(Criminal Episode 2-**

**Scheme 1, "CE2-1")** intentionally misrepresented to HISTORY (the IRS ICS-HISTORY

database) that KENNER is a two person family.  [*ROSE and CORRUPT-IRS-COLLEAGUES*

*unmistakably understood KENNER to be a family of five.*]  ROSE then **(CE2-2)** made

intentional and misleading misrepresentations to KENNER in order to prompt their involuntary

agreement to the misrepresentations of *(CE2-1).*  [*Fortunately, KENNER did not participate*

*with ROSE in her dishonest manipulations.  Their disagreement was inadvertently documented*

*in detailed contemporaneous follow-up faxes back to ROSE after their conversations.*]  ROSE,

KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA,

SHAUGHNESSY, and MEIGS **(CE2-3)** exploited the fraud to extort KENNER for additional

funds not allowed by law.  ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD,

BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS nevertheless intentionally

misrepresented **(CE2-4)** KENNER's supposed agreement to the misrepresentations of *(CE2-*

*1)* in HISTORY as the plan required.  Eventually however, the follow-up KENNER faxes de-

railed the plan by highlighting the lie of the scheme.  ROSE, KELLY, PLASKY, PITTNER,

KENNER COMPLAINT - FOR DAMAGES

ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS therefore **(CE2-5)** began efforts to alter and conceal records, documents, and other objects, with the intent to impair their integrity and availability for use in a future official proceeding. Alternative *Criminal Episode 3* is designed and executed after the plan of *Criminal Episode 2* fails.

### Twenty-Fifth THROUGH Thirty-Eighth PREDICATE RICO ACTS

*WIRE FRAUD (18 § 1343) against ROSE, KELLY, PLASKY, PITTNER, ALITO,*
*CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS*

30.    Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

31.    Though the SHAFF settlement had already been illegally confiscated by KELLY et al., at least two more settlements were still imminent and KENNER's OIC remained pending.  Therefore, to obtain the settlements, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS would have to return the KENNER OIC.  But KENNER's OIC was proper.  The fraudulent acts of *Criminal Episode 2* were therefore necessarily employed to illegally return KENNER's OIC, making opportunity for ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS to seize these new KENNER lawsuit settlement funds.

    a) ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS understood KENNER was a five person family on or before the day ROSE obtained KENNER OIC documentation.

    b) *(CE2-1) &* ROSE ET AL. 1343 ACT 1:  On or about10/14/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KENNER had not claimed any dependents on their OIC application forms.

17                              Case No:

KENNER COMPLAINT - FOR DAMAGES

c) *(CE2-1)* & <u>ROSE ET AL. 1343 ACT 2</u>: On or about 10/15/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KENNER did not qualify for their low income taxpayer application.

d) *(CE2-1)* & <u>ROSE ET AL. 1343 ACT 3</u>: On or about 10/19/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that a key KENNER OIC form, the form dedicated to establishing the number dependents in an OIC, identifies KENNER as a family of 2.

e) *(CE2-1)* & <u>ROSE ET AL. 1343 ACT 4</u>: On or about 10/19/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KENNER is a family of 2 in five separate unambiguous statements.

f) *(CE2-1)* & <u>ROSE ET AL. 1343 ACT 5</u>: On or about 10/19/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KENNER is subject to an AET analysis.

g) *(CE2-2)* & <u>ROSE ET AL. 1343 ACT 6</u>: On or about 10/19/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that ROSE honestly, and in good faith, communicated to KENNER, regarding the parameters of their "non"- low income status.

h) *(CE2-3)* & <u>ROSE ET AL. 1343 ACT 7</u>:  On or about 10/19/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that their act of extortion was legitimate.

i)  *(CE2-4)* & <u>ROSE ET AL. 1343 ACT 8</u>:  On or about 10/19/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KENNER agreed with the 2 person assessment of their family.

j) *(CE2-4)* & <u>ROSE ET AL. 1343 ACT 9</u>:  On or about 10/19/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KENNER agreed with the ROSE analysis of their family income.

k) *(CE2-4)* & <u>ROSE ET AL. 1343 ACT 10</u>:  On or about 10/19/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KENNER was not eligible for an OIC as submitted.

l) *(CE2-4)* & <u>ROSE ET AL. 1343 ACT 11</u>:  On or about 10/21/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that the KENNER SHAFF settlement was obtained solely through a *Notice of Federal Tax Lien.*

m) *(CE2-5) &* ROSE ET AL. 1343 ACT 12: On or about 10/21/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY the cause for not making proper entries into the IRS ICS-HISTORY. [*Proper database entries are not made by ROSE for the next 12 days.*]

n) *(CE2-5) &* ROSE ET AL. 1343 ACT 13: On or about 10/23/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY why (and by whom) KENNER faxes were blocked from the KELLY/ROSE IRS fax machine.

o) *(CE2-5) &* ROSE ET AL. 1343 ACT 14: On or about 11/2/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY why ROSE had not made entries into the IRS ICS-HISTORY database.

p) In addition to acts of wire fraud ROSE ET AL. 1343 ACTs 1-14, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS have made multiple additional entries into the IRS ICS-DATABASE incident to and in support of their fraudulent scheme to confiscate KENNER funds (*Criminal Episode 2*).

q) Ongoing access to the ICS-HISTORY by other agents working in other states has created continuing acts of wire fraud by ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS through ICS-HISTORY's memorialized intentional misrepresentations.

32.     Using the IRS ICS-HISTORY database, ROSE kept CORRUPT-IRS-COLLEAGUES apprised of her actions and progress against KENNER.  CORRUPT-IRS-

1  COLLEAGUES were made intimately aware of ROSE's illegal and dishonest actions against

2  KENNER through the ICS-DATABASE and other open and concealed communications.

3  CORRUPT-IRS-COLLEAGUES nevertheless reviewed, advised, induced, counseled, directed,

4  and otherwise encouraged her conspicuously dishonest actions against KENNER.

5  **Thirty-Ninth PREDICATE RICO ACT**

6  *WITNESS TAMPERING (18 § 1512) against ROSE, KELLY, PLASKY, PITTNER, ALITO,*

7  *CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS*

8      33.    Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated

9  herein.

10      34.    ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD,

11  BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the

12  conduct of the IRS *"enterprise"* to knowingly use <u>ROSE ET AL. 1343 ACTs 1-14 and others</u>,

13  and related misleading conduct, with the intent to corruptly influence the testimony of other

14  IRS staff and third parties in future official proceedings.  ROSE, KELLY, PLASKY,

15  PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS

16  either directly or indirectly took part in the conduct of the IRS *"enterprise"* to also knowingly

17  use <u>ROSE ET AL. 1343 ACTs 1-14 and others</u> to, or in an effort to, alter, destroy, and conceal

18  information collected and stored by the ICS-HISTORY database with the intent to impair the

19  ICS-HISTORY's integrity for use in an official proceeding.

20  **Fortieth PREDICATE RICO ACT**

21  *EXTORTION (18 § 1951) against ROSE, KELLY, PLASKY, PITTNER, ALITO,*

22  *CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS*

23      35.    Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated

24  herein.

25      36.    On or about10/19/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO,

26  CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or

27  indirectly took part in the conduct of the IRS *"enterprise"* to exploit KENNER's fear of

1   economic harm and attempted to induce KENNER to send another $20,000+ to the IRS, using

2   the threat that their OIC would otherwise be "returned" forthwith.

3                    **Forty-First PREDICATE RICO ACT**

4   *WITNESS TAMPERING (18 § 1512) against ROSE, KELLY, PLASKY, PITTNER, ALITO,*

5              *CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS*

6            37.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated

7   herein.

8            38.     On or about10/21/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO,

9   CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or

10  indirectly took part in the conduct of the IRS *"enterprise"* to dishonestly withhold timely IRS

11  ICS-DATABASE entries to, or in an effort to, alter, destroy, and conceal information collected

12  and stored by the ICS-HISTORY database with the intent to impair the ICS-HISTORY's

13  integrity for use in an official proceeding.

14                   **Forty-Second PREDICATE RICO ACT**

15  *WITNESS TAMPERING (18 § 1512) against* ROSE, KELLY, PLASKY, PITTNER, ALITO,

16              CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS

17           39.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated

18  herein.

19           40.     On or about 10/23/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO,

20  CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or

21  indirectly took part in the conduct of the IRS *"enterprise"* to dishonestly block KENNER faxes

22  after 10/23/2009 to, or in an effort to, destroy or conceal the documents, or their timeliness,

23  with the intent to impair their integrity for use in an official proceeding.

24                   ++++++++++++++++++++++++++

25  ***Criminal Episode No. 3***

26           41.     *Criminal Episode No. 3* is ROSE, KELLY, PLASKY, PITTNER, ALITO,

27  CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS second attempt to

fraudulently <u>return</u> KENNER's OIC and thus gain access to other KENNER lawsuit settlement funds. *Criminal Episode No. 3* succeeded and KENNER's assets were illegally confiscated.

42.      On or about 12/8/2009, ROSE "recognized" to HISTORY in the IRS ICS-HISTORY database what was documented in the OIC application submitted to the IRS OIC center on or about 7/23/2009—that KENNER was in fact a five person family and subject to the laws governing hardship (and *Effective Tax Administration*) OICs.  Within hours, ROSE and CORRUPT-IRS-COLLEAGUES intentionally misrepresented to HISTORY that KENNER's OIC was now justly being returned on the grounds that their OIC application had been submitted "solely to hinder and delay" IRS collections.  But,

a)  ROSE and CORRUPT-IRS-COLLEAGUES are required to know the law.

b)  ROSE and CORRUPT-IRS-COLLEAGUES understood that hardship OICs cannot be returned on the basis of the amount offered in consideration of an OIC.

c)  ROSE and CORRUPT-IRS-COLLEAGUES understood that *Effective Tax Administration* OICs are accepted for less than the total tax owed if the taxpayer's tax obligation is due to the fraud of a third party, and;

d)  ROSE and CORRUPT-IRS-COLLEAGUES understood KENNER's tax obligation was due to the fraud of a third party.

### Forty-Third through Forty-Seventh PREDICATE RICO ACTS

*MAIL FRAUD (18 § 1341) against ROSE, KELLY, PLASKY, PITTNER, ALITO,*

*CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS*

43.      Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

a)  <u>ROSE ET AL. 1341 ACT 1</u>:  On or about 12/08/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent in a letter to KENNER that their OIC could not be evaluated because it was submitted "solely to hinder and delay."

b) <u>ROSE ET AL. 1341 ACT 2</u>:  On or about 12/09/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to Rick Edson by mail that they could confiscate KENNER assets with an IRS levy (with a corresponding misrepresentation in the ICS database).

c) <u>ROSE ET AL. 1341 ACT 3</u>:  On or about 12/09/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to have the check representing funds confiscated from KENNER through the unlawful acts of *Criminal Episode 3* mailed to the IRS (with a corresponding entry in the ICS database).

d) <u>ROSE ET AL. 1341 ACT 4</u>:  On or about 1/12/2010, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to Rick Edson that they could confiscate KENNER assets with an IRS levy (with a corresponding misrepresentation in the ICS database).

e) <u>ROSE ET AL. 1341 ACT 5</u>:  On or about 2/24/2010, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to have the check representing funds confiscated from KENNER through the unlawful acts of *Criminal Episode 3* mailed to the IRS (with a corresponding entry in the ICS database).

**Forty-Eighth through Forty-Ninth PREDICATE RICO ACT**

*WIRE FRAUD (18 § 1343) against ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS*

44.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

   a)  *(CE3-1)* & <u>ROSE ET AL. 1343 ACT 15</u>: On or about 12/08/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KENNER had submitted their offer "solely to hinder and delay."

   b)  <u>ROSE ET AL. 1343 ACT 16</u>: On or about 12/08/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KELLY had levied shortly before the KENNER OIC.

### Fiftieth PREDICATE RICO ACT

*BANK FRAUD (<u>18 § 1344</u>) against ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS*

45.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

46.     On or about 12/09/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to knowingly execute the fraudulent scheme of *Criminal Episode 3* (and 2) in order to obtain money under the custody and control of Union Bank of California, a financial institution insured by the federal government.

### Fifty-First PREDICATE RICO ACT

*RACKETEERING (<u>18 § 1952</u>) against ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS*

47.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

KENNER COMPLAINT - FOR DAMAGES

48.     On or after 12/09/2009, ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to use, with intent, the mails and the interstate IRS ICS-HISTORY database to obtain and distribute the settlement funds obtained through the fraudulent scheme and acts of *Criminal Episodes 2 & 3*.

### Fifty-Second PREDICATE RICO ACT

*WITNESS TAMPERING (18 § 1512) against ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS*

49.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

50.     ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to knowingly use <u>ROSE ET AL. 1343 ACTs 15 and 16</u>, and related misleading conduct, with the intent to corruptly influence the testimony of other IRS staff and third parties in future official proceedings.  ROSE, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to also knowingly use <u>ROSE ET AL. 1343 ACTs 15 and 16</u> to, or in an effort to, alter, destroy, and conceal information collected and stored by the ICS-HISTORY database with the intent to impair the ICS-HISTORY's integrity for use in an official proceeding.

+++++++++++++++++++++++++++

*Criminal Episode No. 4*

51.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

52.     KENNER has used FOIA to assemble the facts of their case.  Two requests for ICS-HISTORY data were made: one in December 2009 and one in the summer of 2010.  Prior to receiving a response to their second FOIA request, KENNER filed an administrative

complaint against the IRS. Corrupt IRS agents used the content of the administrative complaint and altered the ICS-HISTORY to conceal their dishonest activities.

### Fifty-Third to Fifty-Fourth PREDICATE RICO ACTS

*WIRE FRAUD (18 § 1343) against KELLY, PLASKY, PITTNER, ALITO, CRAWFORD,*
*BECERRA, SHAUGHNESSY, and MEIGS*

53.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

54.     KELLY ET AL. 1343 ACT 14:  On or about 7/27/2009, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KELLY recognized receipt of the KENNER OIC in boxes to her office.

55.     KELLY ET AL. 1343 ACT 15:  On or about 7/30/2009, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to intentionally misrepresent to HISTORY that KELLY received ICS-HISTORY notification of OIC receipt.

### Fifty-Fifth PREDICATE RICO ACT

*MAIL FRAUD (18 § 1341) against KELLY, PLASKY, PITTNER, ALITO, CRAWFORD,*
*BECERRA, SHAUGHNESSY, and MEIGS*

56.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

57.     On or about 8/19/2010, KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to use the mails to send a fraudulent FOIA fulfillment to KENNER.

### Fifty-Sixth PREDICATE RICO ACT

*WITNESS TAMPERING (18 § 1512) against KELLY, PLASKY, PITTNER, ALITO,*
*CRAWFORD, BECERRA, SHAUGHNESSY, and MEIGS*

58.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

59.     KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to knowingly use acts <u>KELLY ET AL. 1343 ACTs 14 and 15</u>, and related misleading conduct, with the intent to corruptly influence the testimony of other IRS staff and third parties in future official proceedings.  KELLY, PLASKY, PITTNER, ALITO, CRAWFORD, BECERRA, SHAUGHNESSY, and MEIGS either directly or indirectly took part in the conduct of the IRS *"enterprise"* to also knowingly use acts <u>KELLY ET AL. 1343 ACTs 14 and 15</u> to, or in an effort to, alter, destroy, and conceal information collected and stored by the ICS-HISTORY database with the intent to impair the ICS-HISTORY's integrity for use in an official proceeding.

& & & & & & & & & & & & & &

----------------------1-----------------------

## First CAUSE OF ACTION

*RICO (18 § 1962 (c)) against PLASKY, KELLY, PITTNER, ALITO,*

*CRAWFORD and DOES 1 through 25*

60.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

61.     PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25 are defendant persons employed by the IRS enterprise as persons managing or operating the IRS enterprise.

62.     PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25 have either conducted or participated  in the affairs of the IRS through a pattern of racketeering;

    a)  PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25 and are officers, managers, and/or decision makers in the IRS enterprise;

b) The RICO PREDICATE ACTS one through twenty-four do not constitute the lawful, complete, or regular activities of the IRS;

c) PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25 directed, induced, and influenced others within the IRS enterprise to act, help, or conceal the fraudulent acts of *Criminal Episode 1*;

d) PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25 used the federal interstate IRS ICS-HISTORY database, in collaboration with CORRUPT-IRS-COLLEAGUES, to direct, induce, and/or influence others within the IRS enterprise to act, help, or conceal the fraudulent acts of *Criminal Episode 1*;

e) PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25 used the federal interstate IRS ICS-HISTORY database to report and update others, with the help of additional documentation, on the progress of their corrupt efforts;

f) PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25, as IRS officers, managers, and decision-makers, are given authority to act, in accordance with laws and regulations governing the IRS, without the explicit authorization and/or direction of their chain of command;

g) The RICO PREDICATE ACTS  one through twenty-four are beyond the scope of PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25 legitimate authority as government agents and/or managers;

h) Using the federal interstate IRS ICS-HISTORY database, PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25, offered opinion and set the policy for other CORRUPT-IRS-COLLEAGUES.

i) Federal tax assessment and collection is interstate and necessarily affects interstate commerce.

63.     The criminal acts of PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25 form a pattern of racketeering because their activities are related, are

continuing, pose a threat of continuation, and are component parts of a set of multiple schemes to defraud the KENNER taxpayer:

a) The dishonest acts of *Criminal Episodes 1, 2, 3 and 4* have different but related objectives and cause different harm to KENNER.

b) PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25 pose a threat of continued corrupt behavior because agents later act, independent of *Criminal Episode 1*, to act to perpetrate *Criminal Episode 4.*

c) The dishonest acts of *Criminal Episodes 1* are comprised of a diversity of criminal acts.

d) The dishonest acts of *Criminal Episode 1* pose a threat of continued application as a result of IRS laws and regulations that favor or encourage ongoing corrupt actions.

e) PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25 engaged in multiple semi-independent criminal episodes.

f) PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25 engaged in a pattern of racketeering with twenty-four diverse acts of criminal behavior.

g) PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25 continue, at filing of this complaint, to perpetrate illegal acts.

64.    KENNER suffered damages that are proximate to the acts of *Criminal Episode 1.*

a) KENNER was deprived of settlement through OIC as a result of the criminal actions of PLASKY, KELLY, PITTNER, ALITO, CRAWFORD and DOES 1 through 25.

b) KENNER business failures were a consequence of fraudulent confiscation of KENNER assets.

c) A substantial loss in settlement return was a consequence of IRS fraud and failure to settle KENNER IRS tax obligations.

d) Loss of KENNER assets resulted from the fraudulent confiscation of lawsuit settlement funds and the failure to settle the KENNER IRS tax obligation.

----------------------2----------------------

### Second CAUSE OF ACTION

*RICO (18 § 1962 (c)) against ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, MEIGS, and DOES 1 through 25*

65.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

66.     ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, MEIGS, and DOES 1 through 25 are defendant persons employed by the IRS enterprise as persons managing or operating the IRS enterprise.

67.     ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, MEIGS, and DOES 1 through 25 have either conducted or participated  in the affairs of the IRS through a pattern of racketeering;

a) ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, MEIGS, and DOES 1 through 25 are officers, managers, and/or decision makers in the IRS enterprise;

b) The RICO PREDICATE ACTS twenty-five through fifty-two do not constitute the lawful, complete, or regular activities of the IRS;

c) ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, MEIGS, and DOES 1 through 25 directed, induced, and influenced others within the IRS enterprise to act, help, or conceal the fraudulent acts of *Criminal Episodes 2 and 3*;

d) ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, MEIGS, and DOES 1 through 25 used the federal interstate IRS ICS-HISTORY database, in collaboration with CORRUPT-IRS-COLLEAGUES, to

31                      Case No:

direct, induce, and/or influence others within the IRS enterprise to act, help, or
conceal the fraudulent acts of *Criminal Episodes 2 and 3*;

e) ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA,
SHAUGHNESSY, MEIGS, and DOES 1 through 25 used the federal interstate IRS
ICS-HISTORY database to report and update others, with the help of additional
documentation, on the progress of their corrupt efforts;

f) ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA,
SHAUGHNESSY, MEIGS, and DOES 1 through 25, as IRS officers, managers,
and decision-makers, are given authority to act, in accordance with laws and
regulations governing the IRS, without the explicit authorization and/or direction of
their chain of command;

g) The RICO PREDICATE ACTS  twenty-five through fifty-two are beyond the scope
of ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA,
SHAUGHNESSY, MEIGS, and DOES 1 through 25  legitimate authority as
government agents and/or managers;

h) Using the federal interstate IRS ICS-HISTORY database, ROSE, KELLY,
PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY,
MEIGS, and DOES 1 through 25 offered opinion and set the policy for other
CORRUPT-IRS-COLLEAGUES.

68.     The criminal acts ROSE, KELLY, PITTNER, ALITO, CRAWFORD,
BLIZZARD, BECERRA, SHAUGHNESSY, MEIGS, and DOES 1 through 25 form a pattern
of racketeering because their activities are related, are continuing, pose a threat of continuation,
and are component parts of a set of multiple schemes to defraud the KENNER taxpayer:

a) The dishonest acts of *Criminal Episodes 1, 2, 3 and 4* have different but related
objectives and cause different harm to KENNER.

b) ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA,
SHAUGHNESSY, MEIGS, and DOES 1 through 25 pose a threat of continued

KENNER COMPLAINT - FOR DAMAGES

corrupt behavior because agents later act, independent of *Criminal Episodes 2 and 3*, to act to perpetrate *Criminal Episode 4*.

c) The dishonest acts of *Criminal Episodes 2 and 3* are comprised of a diversity of criminal acts.

d) The dishonest acts of *Criminal Episodes 2 and 3* pose a threat of continued application as a result of IRS laws and regulations that favor or encourage ongoing corrupt actions.

e) ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, MEIGS, and DOES 1 through 25 engaged in multiple semi-independent criminal episodes.

f) ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, MEIGS, and DOES 1 through 25 engaged in a pattern of racketeering with twenty-four diverse acts of criminal behavior.

g) ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, MEIGS, and DOES 1 through 25 continue, at filing of this complaint, to perpetrate illegal acts.

69.     KENNER suffered damages that are proximate to the acts of *Criminal Episodes 2 and 3*.

a) KENNER was deprived of settlement through OIC as a result of the criminal actions of ROSE, KELLY, PITTNER, ALITO, CRAWFORD, BLIZZARD, BECERRA, SHAUGHNESSY, MEIGS, and DOES 1 through 25.

b) KENNER business failures were a consequence of fraudulent confiscation of KENNER assets.

c) A substantial loss in settlement return was a consequence of IRS fraud and failure to settle KENNER IRS tax obligations.

d) Loss of KENNER assets resulted from the fraudulent confiscation of lawsuit settlement funds and the failure to settle the KENNER IRS tax obligation.

-----------------------3-----------------------

## Third CAUSE OF ACTION

*RICO (18 § 1962 (c)) against CORRUPT-IRS-COLLEAGUES and DOES 1 through 25*

70.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

71.     CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 are defendant persons employed by the IRS enterprise as persons managing or operating the IRS enterprise.

72.     CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 have either conducted or participated  in the affairs of the IRS through a pattern of racketeering;

a)  CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 are officers, managers, and/or decision makers in the IRS enterprise;

b)  The RICO PREDICATE ACTS one through fifty-six do not constitute the lawful, complete, or regular activities of the IRS;

c)  *Criminal Episodes 1-4* are multiple and semi-independent fraudulent efforts designed and executed to unlawfully collect assets from KENNER;

d)  CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 directed, induced, and influenced others within the IRS enterprise to act, help, or conceal the fraudulent acts of *Criminal Episodes 1-4*;

e)  CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 used the federal interstate IRS ICS-HISTORY database, in collaboration with CORRUPT-IRS-COLLEAGUES, to direct, induce, and/or influence others within the IRS enterprise to act, help, or conceal the fraudulent acts of *Criminal Episodes 1-4*;

f)  CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 used the federal interstate IRS ICS-HISTORY database to report and update others, with the help of additional documentation, on the progress of their corrupt efforts;

g)  CORRUPT-IRS-COLLEAGUES and DOES 1 through 25, as IRS officers, managers, and decision-makers, are given authority to act, in accordance with laws

KENNER COMPLAINT - FOR DAMAGES

and regulations governing the IRS, without the explicit authorization and/or direction of their chain of command;

h) The RICO PREDICATE ACTS  one through fifty-six are beyond the scope of CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 legitimate authority as government agents and/or managers;

i) Using the federal interstate IRS ICS-HISTORY database, CORRUPT-IRS-COLLEAGUES and DOES 1 through 25, offered opinion and set the policy for other CORRUPT-IRS-COLLEAGUES.

j) Federal tax assessment and collection is interstate and necessarily affects interstate commerce.

73.    The criminal acts CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 form a pattern of racketeering because their activities are related, are continuing, pose a threat of continuation, and are component parts of a set of multiple schemes to defraud the KENNER taxpayer:

a) The dishonest acts of *Criminal Episodes 1, 2, 3 and 4* share a common objective to deprive KENNER of both a just evaluation of the OIC, their property, and their rights;

b) The dishonest acts of *Criminal Episodes 1, 2, 3 and 4* continue because elements of the illegal effort are executed and perpetuated through the IRS ICS-HISTORY database.

c) The dishonest acts of *Criminal Episodes 1, 2, 3 and 4* have different but related objectives and cause different harm to KENNER.

d) CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 pose a threat of continued corrupt behavior because agents readily form new plans to accomplish objectives that earlier failed plans had not.

e) The dishonest acts of *Criminal Episodes 1, 2, 3 and 4* are comprised of a diversity of criminal acts.

f) The dishonest acts of *Criminal Episodes 1, 2, 3 and 4* pose a threat of continued application as a result of IRS laws and regulations that favor or encourage ongoing corrupt actions.

g) CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 engaged in multiple semi-independent criminal episodes.

h) CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 engage in at least 13 independent but related criminal schemes.

i) CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 engage in a pattern of racketeering with fifty-six diverse acts of criminal behavior.

j) *Criminal Episodes 1-4* were comprised of multiple related criminal acts.

k) CORRUPT-IRS-COLLEAGUES and DOES 1 through 25 continue, at filing of this complaint, to perpetrate illegal acts.

74.     KENNER suffered damages that are proximate to the acts of *Criminal Episodes 1, 2, 3 and 4.*

a) KENNER was deprived of settlement through OIC as a result of the criminal actions of CORRUPT-IRS-COLLEAGUES and DOES 1 through 25.

b) KENNER business failures were a consequence of fraudulent confiscation of KENNER assets.

c) A substantial loss in settlement return was a consequence of IRS fraud and failure to settle KENNER IRS tax obligations.

d) Loss of KENNER assets resulted from the fraudulent confiscation of lawsuit settlement funds and the failure to settle the KENNER IRS tax obligation.

-----------------------4-----------------------

### Fourth CAUSE OF ACTION

*CONSPIRACY TO COMMIT RICO (18 § 1962 (d)) on Plaintiff's First Cause of Action (RICO (18 § 1962 (c)) against DUNN, LD&D and DOES 1 through 25*

75.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

76.     By making an agreement with KELLY, PLASKY, PITTNER, ALITO, & CRAWFORD to further and achieve the goals of *Criminal Episode 1*:

a)  In a phone call between PITTNER and DUNN on or about 7/21/2009 whereupon DUNN expresses a commitment to find a means to make payment to the IRS circumventing KENNER's legal rights associated with the KENNER OIC.

b)  In a phone call between KELLY and DUNN on or about 7/27/2009 whereupon KELLY and DUNN agreed to remove KENNER's name from the SHAFF settlement check and make it instead payable to the U.S. Treasury.

c)  In an 8/28/2009 letter to Rick Edson, KENNER's malpractice attorney, whereupon KELLY asserted that DUNN, LD&D, and the SHAFF insurance company insisted on ensuring that the SHAFF settlement be paid to the IRS outside of the KENNER OIC.

77.     By DUNN and LD&D's overt acts of racketeering in the furtherance of the conspiracy:

a)  Knowing that KENNER had not given written permission to the IRS (KELLY, PLASKY, PITTNER, ALITO, & CRAWFORD) to take the SHAFF settlement funds outside of the OIC.

b)  Facilitating or enabling KELLY's intentional misrepresentation that KENNER had provided written permission for the IRS to take the SHAFF settlement outside the KENNER OIC.

c)  By facilitating or furthering the acts of mail and bank fraud (RICO Predicate Acts "(6)" and "(21)") to achieve the desired outcomes of the substantive RICO 1962 (c) violation – KENNER's First Cause of Action in COMPLAINT.

78.     And by causing harm to KENNER property and businesses directly through the aforementioned racketeering acts.

KENNER COMPLAINT - FOR DAMAGES

----------------------5----------------------

## Fifth CAUSE OF ACTION

*CONSPIRACY TO COMMIT RICO (18 § 1962 (d)) on "Plaintiff's Third Cause of Action RICO (18 § 1962 (c)) Against CORRUPT-IRS-COLLEAGUES" against CORRUPT-IRS-COLLEAGUES and DOES 1 through 25*

79.     Plaintiffs incorporate all other allegations of the COMPLAINT as if fully stated herein.

80.     KELLY, PLASKY, ROSE, and Does 1-25 conspired to violate the provisions of subsection *18 § 1962* (c) with CORRUPT-IRS-COLLEAGUES by making an agreement with CORRUPT-IRS-COLLEAGUES to illegally confiscate KENNER settlement funds, defeat their OIC application, and to conceal evidence and records that would establish as much in a legal proceeding:

a)  Agreeing, through -and in- the ICS-HISTORY database, to engage in and perpetrate the criminal acts comprising *Criminal Episode 1, 2, 3 and 4.*

b)  Collectively developing the plans used to achieve the fraudulent confiscation of KENNER assets through *Criminal Episodes 1-4.*

c)  Coordinating and directing the participation of IRS agents outside of the criminal schemes.

d)  Sharing strategies and advising co-conspirators on corrupt and dishonest methods to harm KENNER within the ICS-HISTORY and other communication systems.

81.     By CORRUPT-IRS-COLLEAGUES any one of "(1)" through "(56)" overt acts of racketeering in the furtherance of the conspiracy.

82.     And by causing harm to KENNER property and businesses directly through these racketeering acts.

## PRAYER FOR RELIEF

KENNER COMPLAINT - FOR DAMAGES

As a proximate cause thereof, the KENNERS have been injured in an actual amount in excess of $19,020,000 or in an amount to be proven at trial, in accordance with the evidence, plus attorneys' fees and costs.

83.     This wrongful effort has wrought many negative proximate financial impacts on KENNER property and businesses, including, but not limited to: (1) loss of settlement funds, (2) wrongfully defeating KENNER's settlement effort with the IRS, (2) direct harm to the financial outcome of KENNER lawsuits, (3) proximate failure of KENNER businesses and investments, (4) and loss of (or imminent loss of) additional KENNER property and assets.

84.     WHEREFORE, KENNERS pray for judgment as follows:

1.   For treble damages of $64,500,000 according to proof at trial;

2.   Attorneys fees and expenses as appropriate;

3.   For an order requiring the discovery and erasure of misleading and fraudulent data from KENNER files and the IRS electronic database and other systems;

4.   And any other damages the court sees fit and just to grant.

Dated: October 8, 2010                    respectfully submitted,
                                          Brian Kenner


                                          In Pro Per

Dated: October 8, 2010                    respectfully submitted,
                                          Kathleen Kenner


                                          In Pro Per

39                    Case No:

KENNER COMPLAINT - FOR DAMAGES

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

10 OCT -8 AM 11:38  San Diego

**(b)** County of Residence of First Listed Plaintiff *SAN DIEGO*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant *San Diego*
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
*P.O. BOX 427 JULIAN CA 92036*

Attorneys (If Known)

**'10 CV 2105     BTM WVG**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | / ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | | Appeal to District |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
*1961-(c) and (d)  18:1962 RICO*

Brief description of cause:
*RICO AGAINST 12 PERSONS - 3 RICO COA & 2 CONSPIRACY*

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** *$64,500,000*

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE *BANKRUPTCY UNKNOWN*   DOCKET NUMBER *UNKNOWN*

DATE *10/8/2010*   SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # *R904*   AMOUNT *$350*   APPLYING IFP ____   JUDGE ____   MAG. JUDGE ____

*MB 10-08-10*

*CR*

DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS018904
Cashier ID: mbain
Transaction Date: 10/08/2010
Payer Name: WALK-UP CUSTOMER
--------------------------------
CIVIL FILING FEE
 For: WALK-UP CUSTOMER
 Case/Party: D-CAS-3-10-CV-002105-001
 Amount:         $350.00
--------------------------------
CASH
 Amt Tendered:  $350.00
--------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:       $0.00


There will be a fee of $45.00
charged for any returned check.